# NO. 12-08-00001-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DREW CANTY, ASHLEY CANTY,* *RAYMOND DAVIS, AND CAROLYN DAVIS,* *APPELLANTS* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE CITY OF NACOGDOCHES, TEXAS;* *VERNON MCLEMORE; REESE P. ANDREWS;* *RUSSELL R. SMITH; PATRICIA T. SMITH;* *JIM HARRISON; AND CAROL L. HARRISON;* *APPELLEES* | § | *NACOGDOCHES COUNTY, TEXAS* |

---

### MEMORANDUM OPINION

Drew Canty, Ashley Canty, Raymond Davis, and Carolyn Davis (collectively "Plaintiffs") appeal the trial court's judgment in a lawsuit they brought against the City of Nacogdoches, Texas; Vernon McLemore; Reese P. Andrews; Russell R. Smith; Patricia T. Smith; Jim Harrison; and Carol L. Harrison (collectively "Defendants"). In five issues, Plaintiffs argue that the trial court erred by granting Defendants' motion for judgment. We vacate the judgment of the trial court and dismiss the case for lack of jurisdiction.

### BACKGROUND

Plaintiffs filed a lawsuit against Defendants seeking a declaratory judgment that a city ordinance changing the zoning classification of certain real property was void due to alleged failures to follow the proper procedures necessary to enact a zoning change. Plaintiffs also sought injunctive relief preventing the use or development of the property in a manner outside

what was permitted before the allegedly void zoning reclassification. The parties tried their case to the trial court. After Plaintiffs rested, Defendants moved for judgment denying Plaintiffs relief. The trial court granted the motion and signed a judgment to that effect. This appeal followed.

<h2 style="text-align:center">STANDING</h2>

Defendants elicited testimony from Plaintiffs' witnesses at trial regarding the issue of standing. However, after Plaintiffs rested, Defendants moved for judgment on the evidence. Therefore, the trial court was not asked to make a ruling on standing. On appeal, Defendants have argued their case on the law and evidence, failing to address standing. However, standing is jurisdictional and can be raised for the first time on appeal. *Mackie v. Guthrie*, 78 S.W.3d 462, 465 (Tex. App.–Tyler 2001, pet. denied) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Further, an appellate court may consider standing on its own motion. *Mackie*, 78 S.W.3d at 466 (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). We do so here.

**Standard of Review**

When we consider the issue of standing for the first time on appeal sua sponte, we must construe a plaintiff's petition in his favor, and if necessary, review the entire record to determine if any evidence supports standing. *Mackie*, 78 S.W.3d at 466 (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). The general test for standing in Texas requires (1) a real controversy between the parties which (2) will be actually determined by the judicial declaration sought. *Mackie*, 78 S.W.3d at 466 (citing *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996)). A case is justiciable only if there exists a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Mackie*, 78 S.W.3d at 466 (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). In the context of actions seeking declaratory judgments and injunctions regarding the rezoning of neighboring property, a plaintiff does not have standing unless the rezoning affects the plaintiff differently than other members of the general public. *See City of Canyon v. McBroom*, 121 S.W.3d 410, 414 (Tex. App.–Amarillo 2003, no pet.) (citing *Hunt v. Bass*, 664 S.W.2d 323, 324

2

(Tex. 1984)); *see also* W.W. Allen, Annotation, *Standing of Lot Owner to Challenge Validity or Regularity of Zoning Changes Dealing with Neighboring Property*, 37 A.L.R. 2d 1143 (1954) (property owner has standing to challenge ordinance rezoning neighboring property where rezoning "would inflict on [that] owner a special and peculiar injury").

**Discussion**

Plaintiffs pleaded their damages as follows:

> Each of [the] plaintiffs resides within the boundaries of the City of Nacogdoches, is a taxpayer of the City of Nacogdoches, and is a person aggrieved by the decision of the City Commission of the City of Nacogdoches [that is] the subject of this lawsuit.
>
> . . . .
>
> Each of the plaintiffs has a substantial investment in their homes, residences located near the defendants' property described herein. Should defendants or any of them attempt to develop or use any of the property . . . as B-2, General Business zoned property, the value of the plaintiffs' property, particularly their respective residences, would be greatly diminished, causing plaintiffs irreparable harm and injury for which plaintiffs have no adequate remedy at law.

Plaintiffs assert damages related to the fact that they own homes "located near" the rezoned property. Absent a more specific indication of proximity and the causation of their injuries, we will review the record to determine how the injuries alleged by Plaintiffs are shown to differ from those incurred by other members of the general public. *See **Hunt***, 664 S.W.2d at 324; ***City of Canyon***, 121 S.W.3d at 414.

### *Drew and Ashley Canty*

As explained above, Plaintiffs Drew and Ashley Canty pleaded that they were owners of a home "located near" the rezoned property. Drew testified at trial that he believed their property to be more than 200 feet away from the rezoned property.[1] Further, he testified that an apartment complex was situated between his home and the rezoned property, and that he could not see the "existing structures" on the rezoned property from his home.

As to any injury to the Cantys, Drew testified as follows:

---

[1] The City Planner testified at trial that the City mailed notices of City Planning and Zoning Commission hearings to persons owning property within 200 feet of the proposed zone change. *See* TEX. LOC. GOV'T CODE ANN. § 211.0075 (Vernon 2008).

3

Q . . . Do you and Mrs. Canty object to the change of the property, the subject of the zone change, from Plan Development to B-2?

A We do.

Q Okay. Why?

A I would just like the city to follow their own rules.

. . . .

Q And what are you - - what are you speaking of there? I mean, I guess you're implying it didn't comply with its rules?

A Right.

Q In what respect?

A That when the new evidence was presented at the City Commission meeting, they didn't [send the rezoning matter] back to the Planning and Zoning [Commission for reconsideration].

. . . .

Q Mr. Canty, I just want to make sure I understand your position. The only complaint you have here today about this zoning change, and this [rezoned] property . . . that we're talking about, has to do with . . . the city not following its own rules; is that fair to say?

A Sure.

The evidence showed that the City Planning and Zoning Commission ("P & Z") had previously recommended that the City Commission not rezone the property, a recommendation that was not followed by the City Commission.[2] Drew testified regarding that fact as follows:

---

[2] Drew contended that the City's action to change its comprehensive plan, which occurred before the City Commission enacted the rezoning in question, was "new evidence" that should have been presented to the P & Z before the City Commission considered the rezoning. We do not reach the merits of this argument.

4

Q	And, it's true that the - - even though you weren't at the P & Z hearing, the P & Z denied this B-2 zone, is that right?

A	That's correct.

Q	Okay. And, so if it was sent back to the P & Z, how would you stand to gain from that since they had previously denied the B-2 zone? I mean, how would that have helped you?

A	I would just like them to see - - to do what the ordinance says.

Q	But, you couldn't have gotten any more relief from the P & Z than what they had got - -

A	I'd feel better knowing they did it correctly. That's it.

Drew provided no additional testimony of any harm he or Ashley had suffered or would suffer as a result of the rezoning other than testimony that they were taxpayers of the City of Nacogdoches.

As Drew repeatedly stated in his testimony, the Canty's complaint about the rezoning was that it was not done according to proper procedure. Such a complaint indicates no injury different than what would be suffered by any other member of the general public. *See Pierce v. S. Pac. Co.*, 410 S.W.2d 801, 802 (Tex. Civ. App.–Waco 1967, writ ref'd) (plaintiff lacked standing to complain of defendant's alterations to, and uses of, historical monument); *Mitchell v. Dixon*, 140 Tex. 520, 522-23, 168 S.W.2d 654, 656 (1943) (petitioners lacked standing to complain of city's failure to compose statutorily mandated examination board); *City of Canyon*, 121 S.W.3d at 414-15 (plaintiff lacked standing to complain of increased traffic caused by rezoning). Therefore, Drew and Ashley Canty lack standing. *See City of Canyon*, 121 S.W.3d at 414.

### *Raymond and Carolyn Davis*

Plaintiffs Raymond and Carolyn Davis also pleaded that they were owners of a home "located near" the rezoned property. Carolyn testified at trial regarding the Davis home. She testified that their home was "[a]bout half a block" from the rezoned property.[3] She testified that a "large" apartment complex, as well as two other houses, was situated between her home and the rezoned property. She also testified that she could not see the rezoned property if she was "standing on the front porch of [her] house." As to any injury to Raymond and Carolyn, she testified as follows:

---

[3] A city block is not a standardized unit of measurement. Instead, jurisdictions differ as to what size area should be designated as a city block. *See* Land 4 Ever: How Big is a City Block?, http://www.land4ever.com/block.htm (last visited Oct. 14, 2009); *see also Robinson v. City of Dallas*, 193 S.W.2d 821, 823 (Tex. Civ. App.–Austin 1946, writ ref'd) ("It is a matter of common knowledge that city blocks are of varying sizes."). Other evidence at trial established that the Davis home was more than 200 feet from the rezoned property.

Q        . . . What [e]ffect do you think the change to general business will have on the value of your property?

A        Depends on what goes in there - -

. . . .

Q        What are your fears regarding the value of your property if this zoning change is permitted?

A        My fear is that my property will decrease in value.

Q        Okay.  Why?

A        That would depend on what was built on that property.

. . . .

Q        What permissible general business uses are objectionable to you, Mrs. Davis?

A        Car wash, tattoo parlor, liquor store - -

Q        Okay.

A        - - comes to mind first.

Q        All those places sound like they might attract traffic?

A        They might attract crime related incidents.

. . . .

Q        Okay.  And, you understand that under the [previous] PD Zone, there's already a number of different businesses that are already permitted?

A        I do not object to any businesses such as that being placed there.  I do object to it being commercial in that that permits tattoo parlors, car washes, liquor stores being built there—

. . . .

Q        Okay.  Would you agree with me that the apartments between you and Pecan have high crime rates in that area from those apartment complexes?

A        When we purchased our property in 1988, those apartments were not HUD Housing.  Once they became HUD Housing unfortunately the crime rate has increased.

Q        Right.  So, you would agree with me that since 1988, and you purchasing your property, that crime in your area in between you and the [rezoned] property has increased; is that true?

A        It has.

. . . .

Q        Would you agree with me if we went and got on a web site or looked at the tax [rolls] that your property's increased in value since 1988 to present?

A        It has.

Q        So, in fact, you would agree that even though crime has risen in your area your property

values increased; is that true?

A       My property has increased in a limited amount.

Q       Okay.

A       I think it would have increased more if there was not HUD Housing up the street from me.

Carolyn provided no pertinent additional testimony of any harm she or Raymond had suffered or would suffer as a result of the rezoning other than testimony that they were taxpayers of the City of Nacogdoches.

Plaintiffs admitted as evidence a "land use schedule" containing eight pages of varied permissible usages for B-2 zoned property. No evidence was presented that the three complained of uses were specifically under consideration for use on the rezoned property. In fact, the only evidence about the use of the property as a car wash was testimony at the P & Z hearing that a car wash was an unlikely choice.

A case is justiciable only if there exists a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Mackie*, 78 S.W.3d at 466. As such, it was Raymond and Carolyn's burden to assert "a particularized, legally protected interest that is actually or imminently affected by" the rezoning. *See **Save Our Springs Alliance, Inc. v. City of Dripping Springs***, No. 03-04-00683-CV, 2009 WL 1896070, at *7 (Tex. App.—Austin July 3, 2009, no pet.) (citing ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61, 112 S. Ct. 2130[, 2136-37], 119 L. Ed. 2d 351 (1992)). The assertion of a hypothetical injury is not sufficient to meet such a burden. *See **Save Our Springs***, 2009 WL 1896070, at *8 (citing ***DaimlerChrysler Corp. v. Inman***, 252 S.W.3d 299, 304-05 (Tex. 2008)). Here, the testimony regarding injury to Raymond and Carolyn reflected a merely hypothetical injury. Whether the property value of the Davis home would decrease because of activity occurring on the rezoned property, according to Carolyn, "[d]epends on what goes in there." Although Carolyn testified that B-2 zoning allowed for three business uses that she believes attract crime, no evidence was presented to show that any of the three businesses was even under specific consideration. As such, the injury complained of was merely hypothetical. *See **Save Our Springs***, 2009 WL 1896070, at *7-8. Therefore, Raymond and Carolyn Davis lack standing. *See **id.***

## DISPOSITION

Because Plaintiffs lack standing, we ***vacate*** the judgment of the trial court and ***dismiss***

***the case for want of jurisdiction***.  *See **Douglas v. Delp***, 987 S.W.2d 879, 886 (Tex. 1999).


  SAM GRIFFITH  
Justice

Opinion delivered October 14, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)